This is a case arising out of a collision occurring on December 6, 1945, at about seven o'clock, P.M., between a Studebaker Champion automobile, 1942 Model, and a Chevrolet 1 1/2-ton truck, at a point on Louisiana Highway No. 5, approximately three-quarter mile west of the corporate limits of the Village of Sunset, in St. Landry Parish, Louisiana. The Studebaker automobile was being driven by its owner, Lee Roy Dodge, plaintiff herein, travelling west on the said highway, and the truck belonging to E. Menard was in the hands of Mrs. E. Menard, with her husband's knowledge and consent. It is alleged by the plaintiff that the said truck was parked by Mrs. Menard at a driveway on the north side of the highway and that the rear of the truck protruded some four or five feet on the paved portion of said highway and that it was parked without any *Page 96 
lights or flares of any kind; that at the time of the accident it was quite dark and that plaintiff driving at a moderate rate of speed, did not perceive the truck, which was parked partly in his lane of travel, until he was almost upon it and that since cars were coming from the other direction, he was unable to go to his left and that consequently he collided with the truck, resulting in damage to his Studebaker automobile in the alleged amount of $957.40. For these alleged damages this suit was filed against the insurer of E. Menard, on the allegations that the accident was caused solely by the gross negligence of Mrs. Menard, in parking the truck without lights or flares, as set forth, while the truck was in her charge with the knowledge and consent of her husband.
The defendant admits that it is the insurer of E. Menard, and that the truck was in the custody of Mrs. Menard with her husband's knowledge and consent, and that its liability coverage is in excess of the amount of damages claimed; but it denies that there was any negligence on the part of Mrs. Menard or anyone for whom Mr. Menard could be responsible, and, in the alternative, alleges that if any negligence should be found on the part of Mrs. Menard which was a proximate cause of the accident, then it avers that the plaintiff was guilty of contributory negligence barring his recovery. Assuming the position of plaintiff in reconvention, defendant avers that the sole proximate cause of the accident was the gross negligence of the plaintiff, and prays for judgment in the sum of $60, representing the amount paid by it to the truck owner under a collision insurance policy, plus interest and costs. The acts of negligence relied upon by the defendant in its alternative plea of contributory negligence, and in its reconventional demand are (a) that plaintiff was driving at an excessive rate of speed; (b) that he was not keeping a proper lookout; (c) that he failed to see the Chevrolet truck parked, or if he did see it, he failed to heed the presence of said truck on the highway; (d) that the young son of Mr. and Mrs. Menard was signaling with a flashlight in the rear of the unlighted truck, and that plaintiff failed to heed his signal, and, (e) that if plaintiff should claim that he was blinded by any oncoming automobiles, he failed to slacken his speed so as to avoid any unforeseen obstruction.
After filing its answer, containing the defenses set forth hereinabove the defendant filed an exception of no cause of action, which exception, by ageement of both parties, was referred to the merits.
After hearing the case, the trial court overruled the exception of no cause of action, and rendered judgment in favor of the plaintiff, for written reasons assigned. The record shows that in concluding his written reasons, the trial judge ordered that there be judgment in favor of the plaintiff in the sum of $864.20, and then, on May 28, 1947, he signed a formal judgment for the sum of $957.40. From this judgment the defendant has appealed.
[1] The exception of no right and no cause of action is again urged before this Court by the defendant who contends that the petition affirmatively shows that plaintiff was himself guilty of contributory negligence which was a proximate cause of the accident. It is contended that plaintiff has not alleged any unusual circumstances which could have prevented him from having the accident. In effect, defendant claims that the plaintiff should have at least alleged that he was blinded by the headlights of oncoming cars, or at least alleged the reason why he could not and did not see the parked truck in time to avoid the accident.
In support of its contention, defendant relies on the rule that the driver of an automobile at night shall have his car under such control as to be able to stop it within the distance projected by his headlights in front of him. We have discussed this rule in the recent case of Cole v. Burgess, 31 So.2d 450. The first syllabus of the reported decision correctly states our view of the rule thusly: "One driving [an] automobile at night who does not have automobile under such control as to be able to stop within the distance of projection by his headlights in front of him is not guilty of contributory negligence as a matter of law, *Page 97 
but can only be found negligent upon the trial of the case on the merits."
[2-4] It is now well settled that a plaintiff need not negative his own negligence in a tort suit in order to disclose a cause of action or recover therein. The exception of no cause of action will be sustained only when the petition recites a state of facts which shows negligence on the part of plaintiff and that such negligence was a proximate cause of the accident. In his petition, plaintiff has not alleged any state of facts showing his negligence. The exception of no right or cause of action was properly overruled.
[5,6] The evidence in the case, which consisted only of the testimony of plaintiff and his witnesses, is as follows:
Plaintiff testifies that he was driving to Bellevue on the west side of the Town of Sunset at about 40 or 45 miles per hour and that he came upon the Menard truck on the highway about one-half mile from the city limits; that the truck was a Chevrolet ton and a half stake body truck, and that the car he was driving was a Studebaker. Plaintiff states that when he saw the truck, which was parked partly in his lane of travel, without any flares or signals or lights of any kind, he threw on his brakes and started to swerve out to miss the truck, but there were some oncoming cars approaching, so, instead of having a head-on collision, he had to hit the truck.
Plaintiff was alone in his Studebaker and Mrs. Menard was alone in the truck, and just as the accident occurred, Mrs. Antoon and Mrs. Monteilh arrived at the scene travelling in the opposite direction from plaintiff, and they witnessed the collision. Mrs. Antoon testified that as they both neared the scene of the collision she could see plaintiff's car coming from the opposite direction and that all of a sudden she heard the collision; that at that time she did not know what object plaintiff's car had struck, but after the collision, as they drove closer, they saw the Menard truck, which was unlighted, had no flares, and was parked at a 45 degree angle on the pavement in the same lane in which plaintiff was travelling; that Mrs. Menard was alone in the truck; that after colliding with the truck, plaintiff's car continued some 40 or 50 feet to the left and came to rest in the left ditch, almost directly in front of them. In effect, she says that their car stopped at just about the point where plaintiff went into the ditch on his left hand side of the highway.
It is stipulated that if Mrs. Monteilh had testified, she would have testified substantially like Mrs. Antoon. When Mrs. Antoon and Mrs. Monteilh arrived at the scene, Mr. Dodge, the plaintiff, requested that they go get an officer in Sunset to have him investigate the accident. Accordingly, Mr. Simon Durio, the Marshal of Sunset, was summoned and he arrived right after the accident and made his investigation. His testimony merely brings out the fact that the road where the accident happened is a paved road of the usual dimensions, with gravel and dirt shoulders on each side, of some 8 or 9 feet, and that at the scene of the accident the road was perfectly straight. He also stated that the truck, when he arrived at the scene, was some four or five feet on the pavement and that the car had traveled some 60 feet west of the truck and landed on the south side of the road which runs east and west.
The only other witness in the case was Mr. Glasscock, Studebaker dealer from Opelousas. Mr. Glasscock testified that the OPA ceiling price for a dealer on a car such as plaintiffs would be $1080.25; and that in effect a dealer could charge that price for a car like plaintiff's, in good condition, sold with warranty; that the OPA ceiling price for the car sold without warranty, known as "as is" price was $864.20. He states that the salvage value of plaintiff's car was $125. The plaintiff claims the dealer's OPA price, less $125, in other words, $957.40. There is a slight discrepancy in the amount alleged in the petition as to the OPA ceiling and the amount testified by Mr. Glasscock. The petition alleges that OPA ceiling price to be $1082.40 and Mr. Glasscock states that it is $1080.25.
The main contention of the defendant that the plaintiff was guilty of negligence, based on the five contentions set forth hereinabove. It is contended that plaintiff has shown no unusual circumstances which *Page 98 
could have prevented him from having the accident, in spite of any negligence of Mrs. Menard. In effect, defendant claims that the plaintiff should have at least testified that he was blinded by the headlights of oncoming cars or should have shown so by the evidence upon the trial of the merits. The fact remains that this truck was a stake body truck parked at a 45° angle and was necessarily not easy to see, and, as testified by all the witnesses, the night was very dark; that plaintiff was not travelling at an excessive speed, for certainly 45 miles per hour on a straight paved highway is not excessive; that he did not see the truck until he was almost upon it, and that at that time he saw the lights of oncoming cars and consequently could not take the chance of going to his left, and had no reasonable alternative but to collide with the truck. Under these circumstances we can not see any negligence on the part of plaintiff, and feel that the accident was caused solely by the gross negligence of Mrs. Menard in having the Menard truck parked without lights on a highly traveled paved highway. True, it was alleged by defendant that Mr. and Mrs. Menard's young son had stood behind the truck with a flashlight, but there is no proof of that allegation whatsoever, and it is flatly contradicted by the plaintiff and by Mrs. Antoon.
[7] The petition and the evidence having established the positive negligence of Mr. Menard, it was incumbent upon the defendant to show contributory negligence on the part of plaintiff to extricate itself from liability. The defendant has failed to do so.
[8] As to the measure of damages, we have already called attention to the inconsistency in the two judgments rendered by the lower court. It is our opinion that the proper measure of damages is the OPA ceiling price, which applies to a dealer, because if plaintiff had desired to replace his demolished automobile with the same model, he would ordinarily have gone to a dealer to do so, and that is the price he would have had to pay. We will therefore reform and recast the judgment so as to grant plaintiff a judgment in the amount of $955.25, being the difference between the OPA price of $1080.25, as testified to by Mr. Glasscock, less the salvage value of $125.
For these reasons, it is ordered that the judgment appealed from is hereby reformed so as to read as follows: "It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Lee Roy Dodge, and against the defendant, Bituminous Casualty Corporation, in the full sum of Nine Hundred and Fifty-five and 25/100 ($955.25) Dollars, plus legal interest from judicial demand and all costs of this suit to be taxed."