86 So.2d 909 (1956)
229 La. 798
Ray VOWELL
v.
MANUFACTURERS CASUALTY INSURANCE COMPANY et al.
No. 42033.
Supreme Court of Louisiana.
February 20, 1956.
Rehearing Denied March 26, 1956.
*911 Hobbs & Yeates, Minden, for plaintiff-relator.
Gravel, Humphries, Sheffield & Mansour, Alexandria, for intervenor.
Jackson, Mayer & Kennedy, Shreveport, for defendants-respondents.
SIMON, Justice.
Ray Vowell instituted this suit for damages in the sum of $155,000 for personal injuries sustained by him as a direct result of an accident which occurred on U. S. Highway 80, five miles west of Minden, Louisiana, on December 11, 1951, at about 5:30 a. m., involving a Chevrolet pickup panel truck and a Chevrolet truck and semitrailer loaded with lumber. The lumber truck was owned by W. L. Bennett of Ruston, Louisiana, and at the time of the accident was being operated by Ernest Lynn. Plaintiff was a passenger in the pickup truck, which was owned by his employer, George W. Fowler, and which at the time of the collision was operated by another employee, Francis A. Graham. Other occupants in the pickup truck were Jack Salmon and Roland Dyck. Plaintiff, Vowell, was sitting in the cab of the pickup truck between Graham and Jack Salmon. Roland Dyck was riding in the "doghouse" in the back of the truck. All were employees of George W. Fowler and at the time of the accident were on their way to work and in the scope and in the course of their employment. All received injuries.
Vowell and each of the other occupants of the pickup truck instituted separate suits against W. L. Bennett, the owner of the lumber truck, and his insurer, Manufacturers Casualty Insurance Company, for damages for personal injuries incurred by them as a result of the accident.
The Coal Operators Casualty Company intervened in the suits brought by Vowell, Dyck and Salmon, alleging that it was the workmen's compensation insurer of George W. Fowler, employer of said parties, and that as a result of the accident it had been obliged to pay them compensation and medical expenses as set forth in their respective suits, and, accordingly, prayed for reimbursement of compensation payments out of whatever judgments may be rendered in favor of plaintiffs.
The defendants W. L. Bennett and Manufacturers Casualty Insurance Company filed joint answers to each of plaintiffs' petitions and denied that Ernest Lynn was guilty of any negligence. They contended that the sole and proximate cause of the accident was Graham's negligent operation of the pickup truck. Alternatively, they pleaded contributory negligence on the part of plaintiffs.
The lower court consolidated these cases for purposes of trial but rendered separate judgments in favor of each plaintiff: in favor of Vowell in the total sum of $20,700, in favor of Roland Dyck in the total sum of $5,500, in favor of Jack Salmon in the total sum of $2,600, in favor of Francis Graham in the total sum of $500. In the suits filed by Vowell, Dyck and Salmon the district court further decreed that the Coal Operators Casualty Company be reimbursed with the respective amounts of compensation payments made to plaintiffs, all as set forth in intervenor's petition.
Appeals were taken to the Circuit Court of Appeal, Second Circuit, which court also consolidated these cases for purpose of appeal and reversed the judgments of the district court, thereby absolving the defendants of liability for negligence on the part of Ernest Lynn.
*912 The Court of Appeal concluded that the sole and proximate cause of the accident was the negligent operation of the pickup truck at an unsafe speed under prevailing weather conditions. It further concluded that the operator of defendant's lumber truck was free of any act of negligence. The claims of all plaintiffs were dismissed.
Plaintiffs applied for writs, which were granted by this court in each case. The matters are now before us for review.
The main issues before us are: (1) Whether Lynn, the driver of defendant's lumber truck, was guilty of negligence. (2) Whether Graham, the driver of the pickup truck, was guilty of any negligence contributing to the accident so as to bar his recovery. (3) Whether plaintiffs Vowell, Salmon and Dyck as guest passengers were contributorily negligent so as to bar recovery for injuries sustained by them as a result of this accident.
The record discloses that Graham approached the scene of the accident at a speed of approximately 40 miles per hour. On rounding a small curve and starting up a slight incline in the roadway, he observed a white panel milk truck with its reflectors, tail and clearance lights burning. He also observed that this milk truck was parked on the right shoulder of the roadway with its two left wheels on the outer edge of the blacktop or paved portion of the highway, a position which did not obstruct traffic in the right lane. When Graham reached a point approximately 75 feet from the milk panel truck he saw for the first time the lumber truck parked in his lane of traffic, without lights, reflectors, flares or other warning signals. Graham had also observed approaching traffic in the left lane of traffic. Realizing the imminent danger of passing the lumber truck on the left because of the approaching eastbound traffic, he immediately applied his brakes, but was unable to stop the truck in time to avoid colliding into and jamming his truck under the rear of the parked lumber truck.
Though the driver of the lumber truck contends that he was unable to pass the milk truck to its left without hazard to oncoming eastbound traffic, we find that he stopped his truck in the right lane of traffic and remained there for at least 4 or 5 minutes, parked parallel and alongside of the milk truck. No effort is made by him to explain this prolonged stay in the center of the highway. There is no evidence that the eastbound oncoming traffic was so heavy or steady as to warrant such a delay. On the other hand, we find evidence in the record to show that there was sufficient room on the highway for the lumber truck to pass the milk truck and still remain in its proper lane.
There is no question that the lumber truck completely blocked the right lane of traffic; the controversy is whether the lumber truck was stopped without any taillights. The evidence disclosed by the record as to this important phase of the case is accurately stated in the written opinion of the trial judge as follows:
"I am convinced that the lumber truck came upon this parked milk truck and saw an oncoming vehicle and fearing that there was insufficient room for such a situation came to a stop approximately parallel with the milk truck. I am, also, convinced that the lumber truck did not have any tail lights burning at the time of the collision with the rear end thereof. There is conflicting evidence on this important point of the case, but I am bound to believe Mr. Graham's view, in light of all the other factors of the case. Of all the witnesses, who testified in the case, Mr. Graham was the one most impressive to me. Where there is a hopeless conflict in testimony, it becomes the trial judge's painful duty to carefully consider all of the evidence and then be satisfied of a true version of same. As for myself, I am satisfied that the tail lights were not burning on the lumber truck at the time of the accident.
"The pick-up truck was traveling about 40 miles per hour, when the driver saw the parked milk truck. He then saw an oncoming car, which prevented him from seeing the lumber truck, which was directly in his lane of traffic, until he was so close that the accident was unavoidable. *913 He collided with the rear of the truck, causing personal injuries to all of the plaintiffs."
An examination of the evidence in its entirety convinces us that the trial court was correct in its conclusion that the driver of the lumber truck was negligent in stopping on the highway, completely blocking a lane of traffic, with inadequate or no visible signals warning approaching traffic of its presence, and that such negligence was the sole and proximate cause of the accident. The evidence clearly preponderates to support plaintiff's contention that the lumber truck was without lights or other signals and therefore not observable until too late to avoid the accident.
Graham was traveling at a speed well within the legal limits and was exercising such due care and caution as was warranted by the then prevailing conditions of time and weather. The plainly revealed position of the white panel milk truck and the lights of the approaching eastbound traffic were caution enough to him that he was bound to remain in his own lane of traffic. There was nothing whatever to cause him to anticipate any hazard on the open highway in the vicinity of the milk truck such as this unlighted, parked lumber truck. When he first saw the parked timber truck he did all he could do to avoid the accident. He immediately applied his brakes. Had he swerved to the left of the timber truck he would have collided with approaching eastbound traffic. Had he swerved to the right of the timber truck he would have collided into the rear of the white panel milk truck. Faced with this emergency created by the timber truck, he did all that could have been done under the circumstances in an effort to avoid the accident.
Our rule that a motorist traveling on the public highways after dark or during a rainstorm, fog, or other abnormal condition, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume that the road is safe for travel even at night. But that exception to the general rule is itself subject to the exception that a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L. R.A.1917F, 253; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1.
The case of Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377, involved a truck parked on the dirt shoulder of the paved highway, with one of its front wheels resting on the shoulder and the other front wheel and both rear wheels resting on the pavement. The body of the truck extended at an angle across the right traffic lane about 5 feet from its outer edge, with no lights or flares to warn motorists of its presence. The plaintiff was proceeding along this partially blocked traffic lane when the parked truck suddenly loomed up out of the darkness; and because of traffic approaching from the opposite direction he had no alternative than to apply his brakes, but being then too close was unable to avoid running into the rear end of the parked truck. We held that the plaintiff was not negligent in failing to see the truck sooner than he did under the then prevailing circumstances.
In the case of Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720, we affirmed the decision of the Court of Appeal holding free from negligence the motorist traveling on a straight highway at 45 miles per hour on a dark evening, unable to see a darkened truck until he was almost upon it and unable to take the risk of going to his left due to approaching traffic, and with no reasonable alternative but to collide with the parked truck. 33 So.2d 95.
In the case at bar the location of the milk truck and the fact of the eastbound oncoming traffic afforded nothing to indicate an obstacle in the nature of the timber truck which was presented to Graham. *914 We readily agree with the trial judge that the facts in this case lend themselves to a conclusion which exonerates the plaintiff Graham from the charge of contributory negligence.
Plaintiffs Vowell, Dyck and Salmon as passengers in the pickup truck are entitled to recover against the owner of the lumber truck, since it has not been shown that they were in any manner whatsoever contributorily negligent.
Contributory negligence is, as its phrase signifies, negligence which contributes to the accident, that is, negligence having causal connection with it and but for which the accident would not have occurred. Insofar as the rights of a guest in an automobile are concerned, it is well settled that in actions against third persons, the guest riding in an automobile has the right to rely to a reasonable extent on the care and proper operation of the car by the driver. The guest is not called upon to be on the same alert and to have seen what the driver should have seen. It is only when there is danger so apparent that he, as well as the driver, should have seen it that he becomes negligent also if he fails to give warning or to protest if the driver's negligence continues. Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314; Lorance v. Smith, 173 La. 883, 138 So. 871; Delaune v. Breaux, 174 La. 43, 139 So. 753; White v. State Farm Mutual Auto Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338; Herget v. Saucier, 223 La. 938, 67 So.2d 543.
After the rendition of judgment herein, but prior to a formal signing of the judgment in the consolidated cases, the defendants filed an exception of no cause or right of action, contending that the contract of insurance entered into by W. L. Bennett and Manufacturers Casualty Insurance Company limits the liability of the insurer to the maximum sum of $10,000 for one person and $20,000 for any one accident and that the demands of plaintiffs in each of the above consolidated cases be dismissed insofar as said demands exceed the terms and limits of this contract. The trial court properly overruled the exception.
Act 55 of 1930, as amended by Act 541 of 1950, LSA-R.S. 22:655, authorizes a direct action against the insurer of the insured. The act specifically provides, "* * * The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy * * *, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido. * * * Nothing contained in this Section shall be construed to affect the provisions of the policy or contract * * *." (Italics ours.)
This right of an injured party to join the automobile liability insurer in an action against the insured for damages is purely remedial and does not affect substantial rights under the insurance contract nor impair its obligations. The insurer herein stands in the shoes of the insured to the extent or limit of its policy, and to this extent we will amend the judgment in favor of plaintiff Vowell.
The judgment of the trial court specifically provides that the liability of the defendant Manufacturers Casualty Insurance Company is limited to its maximum liability of $10,000 for one person and $20,000 for one accident, and we are convinced that the defendant is adequately protected thereby.
Accordingly, for the reasons assigned, the judgment of the Court of Appeal is reversed, annulled and set aside, and the judgment of the trial court is reinstated and affirmed.

On Application for Rehearing.
PER CURIAM.
We find no merit in the application for a rehearing. However, counsel for defendants, Manufacturers Casualty Insurance Company and W. L. Bennett, direct our attention to the fact that we inadvertently reinstated the judgment in favor *915 of Mrs. Adele Bollier Vowell in the sum of $20,700, which was in excess of the limit of liability of Manufacturers Casualty Insurance Company under its policy of insurance. We shall therefore amend and reinstate the judgment of the District Court so as to conform to the opinion of this court, recognizing the limit of liability of the insurance carrier for any one person to be $10,000.
It is, therefore, ordered that the judgment of the District Court herein, in favor of Mrs. Adele Bollier Vowell and against defendants, W. L. Bennett and Manufacurers Casualty Insurance Company, in solido, in the full sum of $20,700, with legal interest from judicial demand until paid and all costs, be amended to the extent that the solidary judgment, insofar as it runs against Manufacturers Casualty Insurance Company, be limited to the sum of $10,000, with legal interest from judicial demand until paid and all costs. As thus amended, the judgment of the District Court is reinstated and affirmed.
The application for a rehearing is denied.