CULPEPPER, Judge.
This is a tort action by Wilman Mose: against the Insurance Company of the-State of Pennsylvania for damages for personal injuries sustained when an unlighted wagon, being driven by the plaintiff, was struck from the rear by a 1957' GMC pickup truck, owned and operated by the defendant’s assured, Thomas Oliver. After trial on the merits, the lower court awarded plaintiff judgment in the total sum of $2,644.50, from which judgment defendant has taken this appeal. Plaintiff has answered the appeal seeking an increase in the award to defendant’s policy limit of $5,000.
The testimony is greatly conflicting, but the undisputed evidence shows that the accident occurred on October 22, 1959, on Louisiana Highway 29 in ■ the town of Chataignier, Evangeline Parish, Louisiana, at a point where the said highway is of blacktop construction; that the speed limit-was 45 miles per hour; that the weather-was clear and dry; that on this particular-day sunset was at 5:22 p. m.; that the said', two-horse farm wagon was being driven by-the plaintiff on the extreme right side of' the highway when the pickup truck, being-driven by Mr. Oliver, approached from-the rear at a speed of about 40 miles per-hour and struck the left rear wheel of the-wagon, causing it to be turned over and broken to pieces in the ditch, and causing^ personal injuries to the plaintiff.
*313 It is the contention of the plaintiff that the accident occurred at about S :30 p. m., during daylight, and that Mr. Oliver, as he ■entered the town of Chataignier, passed an automobile operated by one Hillary Fonte-not which was following the wagon; that Mr. Oliver successfully passed the Fontenot automobile, but when he attempted to pass the wagon, the right front of his truck caught the left rear of the wagon and knocked it over. Plaintiff contends that Mr. Oliver was obviously negligent in not keeping a proper lookout and not having Tiis truck under sufficient control to avoid (Striking the said wagon.
It is the contention of the defendant that the accident occurred between 6 o’clock •and 6:30 p. m., during the hours of darkness, and that Mr. Oliver was blinded by the lights of an oncoming vehicle being ■driven by Mrs. Yvonne Guillory, which prevented him from seeing the unlighted •wagon in time to avoid the collision.
The principal issue is the time at which the wreck occurred and the degree of visibility at that time. For the plaintiff, five witnesses, including the plaintiff himself, testified it was daylight. For the defendant, four witnesses (including the accident report of Trooper Manuel) gave evidence that it was dark at the time of the collision. .A brief review of the testimony of these witnesses is appropriate.
Hillary Fontenot and his wife, Mary Rose Fontenot, who were not related to the plaintiff, Wilman Mose, hut had known Tiim previous to the accident, testified that as they approached the town of Chataignier in their automobile they did not have their lights on because it was not yet dark, and they first observed the wagon approximately ¡Híths of a mile ahead of them. (Fonte-not explained that he was once connected with horse racing and therefore could judge the distance accurately.) They stated that as they came closer to the wagon, the red pickup truck being driven by Mr. Oliver, without any lights, passed and cut in front of them and hit the wagon which was being driven by the plaintiff with its aright wheels on the shoulder and its left wheels on the pavement. Both testified that the accident occurred at about 5:30 p. m. and that it was daylight. Both also testified that Trooper Manuel arrived at the scene approximately 1 hour after the wreck, at which time it was dark.
The next witness for plaintiff was Mr. Frank Brown, for whom the plaintiff, a 32 year old colored male, works as a farm laborer occasionally. Mr. Brown testified that from his home nearby he heard the crash and drove in his car, without lights, to see what had happened. He stated that the wreck occurred at about 5:30 p. m. during daylight.
Plaintiff testified' that he quit work at about 4:30 p. m., after which his employer, Mr. Miller, took him part way home. As he was walking the remaining short distance to his house, one Vincent Ceasar, a 19 year old Negro male, drove up in the wagon on which was loaded a bed belonging to plaintiff’s mother, whose furniture Ceasar was moving that afternoon from another place to the home of plaintiff. Plaintiff got on the wagon with Ceasar and they drove, to plaintiff’s home where they unloaded the bed and then started to drive back to Chataignier. Plaintiff testified that they had driven approximately two miles when Vincent Ceasar, who had been driving up until that time, asked plaintiff to hold the reins while he rolled a “Bull Durham” cigarette. The accident occurred about 5 minutes after plaintiff took the reins. Plaintiff stated that he was driving the wagon with both the .right and the left wheels entirely off the pavement when he heard the truck coming, but did not turn around to look, and the next thing he knew the wagon had been struck and he was lying dazed in the ditch. Plaintiff admitted that the wagon had no lights. He stated further that just prior to the crash he did not see any cars approaching from the front nor did he see any cars with their lights on.
*314 Vincent Ceasar, who was with plaintiff on the wagon, was actually called as a witness for the defendant for the apparent purpose of testifying as to how long the plaintiff had been driving the wagon immediately before the collision. Ceasar admitted having made a statement before trial, but on the witness stand said that he could not remember what statement he had made as to the length of time plaintiff had been driving the wagon. On this development, counsel for defendant plead surprise and that the witness was hostile. Without objection from plaintiff, the defendant was allowed to try to impeach his own witness, Ceasar, by showing a prior contradictory statement, but all the witness would testify to was that he had made a statement but he couldn’t remember what he had said nor could he testify at the trial as to how long plaintiff had been driving before the wagon was struck. He did say that he asked the plaintiff to hold the reins while he, Ceasar, rolled a cigarette. During examination by plaintiff, the witness Ceasar testified that it was daylight at the time of the accident, and that he had not seen any cars with their lights on.
The first witness for defendant was Mr. Thomas Oliver, who testified that on the afternoon in question his hay baler broke down at about 4:55 p. m. and he phoned “Roy Tractor Company” in Ville Platte to remain open until he could go there for the necessary parts. Mr. Oliver testified that he drove to Ville Platte and had to wait 10 or 15 minutes for certain chains to be made up on the new parts, after which he left Ville Platte and started toward Chataignier, some 10 or 11 miles distance, for the purpose of arranging for certain laborers whom he needed the next day in his hay baling operations. Mr. Oliver testified that as he approached Chataignier he had his lights on. He didn’t remember passing any vehicle, but an automobile approaching him from the front had on its bright lights which blinded him. He signaled by dimming his own lights and then just as the approaching vehicle dimmed its lights, he saw the wagon for the first time about 20 yards in front of him on the extreme right side of the highway. Mr. Oliver testified that he had been going about 40 miles per hour, but that he slowed when blinded by the approaching bright lights and that on seeing the wagon he immediately applied his brakes and cut to the left but was unable to avoid striking the wagon. Mr. Oliver estimated that the collision occurred at about 7:00 p. m. and he testified positively that it was dark and that both he and the driver approaching him had on their headlights.
Mrs. Yvonne Guillory testified that a short time before the accident she herself had been driving into Chataignier, in the same direction that the wagon was traveling, and that it was dark and she had her lights on. As 2 or 3 cars approached her she was partially blinded by their lights, but she saw a “movement” on the side of the road and slowed and then saw that it was the unlighted wagon. She testified that on that occasion the wagon pulled off in a side road and allowed her to pass and that she went on into Chataignier and turned around and started back toward her home. As she drove back on the same road she saw the truck, which she later learned was being driven by Mr. Oliver, approaching with its lights on. She could not see the wagon but knew that it must still be on the road in front of the truck because there was no place for the wagon to have turned off. She slowed down and turned her lights from bright to dim and almost immediately she saw the truck strike the wagon. Mrs. Guillory stated that she was a little less than 75 feet from the wagon at the time it was struck by the truck. She testified that the accident occurred at about 6:15 p. m. and that it was dark.
The next witness for the defendant was Mrs. Sadie Fontenot, who testified that from her home in Chataignier she heard the crash and ran out to the highway where she saw the Oliver truck with its lights on. She testified that she stayed at the *315 scene only about 10 minutes and that during that time someone put flares out to warn approaching traffic. She stated positively that it was dark at the time of the collision.
State Trooper Clifford Manuel testified that according to his report he received a radio message at 7:15 p. m. to investigate the accident. He did not remember where he was at the time he received the message but his report showed that he arrived at the scene at 7:45 p. m. His report, which was filed in evidence without objection, shows that the accident occurred at 7:00 p. m. and that the “Reason for not seeing danger”, as to the Oliver vehicle, was “bright lights.” This report also shows that the speed limit was 45 miles per hour. In connection with the testimony of Trooper Manuel it is noted that Mr. Oliver testified that immediately after the accident a Mr. E. J. Guillory had gone to call the trooper whose report, as aforesaid, shows that the trooper received the call at 7:15 p. m.
It was stipulated in evidence that on October 22, the day of the accident, the sun set at 5 :22 p. m. It is noted that LSA-R.S. 32:290 requires that all vehicles operating 30 minutes after sunset be equipped with headlights and taillights, which statute is indicative of the period of time after sunset within which the legislature considered it safe to drive without lights. See also LSA-R.S. 32:441 which requires flares 30 minutes after sunset.
After a careful study of all the evidence, and in particular a detailed consideration of the testimony of the above witnesses, it is our opinion that the record shows by a clear preponderance that this accident occurred more than 30 minutes after sunset and certainly at a time when it was sufficiently dark that all vehicles on the highway should have illuminated their lights. The positive testimony of Thomas Oliver, Mrs. Yvonne Guillory and Mrs. Sadie Fontenot, that it was dark and that the Oliver vehicle had its lights on, and that Mrs. Yvonne Guillory had her lights on, is corroborated by the report of the State Trooper that Mr. Oliver was blinded by lights and that the Trooper did not receive the message about this accident until 7:15 p. m. In our opinion the testimony of these witnesses far outweighs the testimony of plaintiff’s witnesses as to this factual issue.
We are aware that in so ruling we have reached a conclusion contrary to that of the district judge on a question of fact, but we note that in the trial court’s written opinion it is stated that the Trooper’s report “fails to reflect that the driver of the pickup was blinded by an oncoming car. He testified that if that had been the case it would have been inserted in his report.” Our examination of the Trooper’s report reveals that in the space called “Reason for not seeing danger” it is stated as to the Oliver vehicle, “bright lights”. The testimony of Trooper Manuel clearly indicates that he remembered having made such a notation in his report. Of course, we do not know how much weight the trial judge gave to this particular erroneous factual finding, but it certainly did to some extent affect his holding.
We note also that the trial judge in his written opinion (Tr. 19) finds that “the sole and proximate cause of this accident was the negligence of the insured in proceeding at a high rate of speed under the circumstances and not keeping a proper lookout for the plaintiff and the traffic ahead of him.” Here again we must disagree with our brother below. The record shows that the speed limit was 45 miles per hour and that preceding the accident Mr. Oliver had been going 40 miles per hour, but he slowed on being blinded by Mrs. Guillory’s lights. There is no evidence whatever that Mr. Oliver was exceeding the speed limit or traveling at an unreasonable speed under the circumstances.
Having reached the factual conclusion that this accident occurred after dark we find applicable here the law as set forth in Vowell v. Manufacturers Cas. Ins. Co. et al., 229 La. 798, 86 So.2d 909, 913 in which *316 plaintiff’s pickup truck struck an unlighted lumber truck parked partially on the highway opposite a milk truck. The Supreme Court, in refusing to find the plaintiff guilty of contributory negligence, held as follows :
“Our rule that a motorist traveling on the public highways after dark or during a rainstorm, fog, or other abnormal condition, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted constitutes an exception to the general rule that a motorist may assume that the road is safe for travel even at night. But that exception to the general rule is itself subject to the exception that a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A. 1917F, 253; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1.”
In the more recent case of Fontenot v. Lafleur, 124 So.2d 607, 608, (3rd Cir. La. App.1960, writ of certiorari denied) this court stated the applicable law as follows:
“ * * * for a night motorist is not negligent for a failure to perceive and a consequent failure to avoid colliding with an obscured vehicle obstructing his path on the traveled portion of the highway, if such motorist could not reasonably have anticipated that his traffic lane was so obstructed and if he could not by the exercise of reasonable prudence have observed the obstructing vehicle in time to have avoided colliding with it. Suire v. Winters, 233 La. 585, 97 So.2d 404; Vowell v. Manufacturers Cas. Ins. Co., 229 La. 798, 86 So.2d 909; Fisher v. Norwich Union Fire Ins. Soc., La.App. 1 Cir., 119 So.2d 562; Washington Fire & Marine Ins. Co. v. Canal Ins. Co., La. App. 1 Cir., 110 So.2d 231; and the many cases therein cited.”
Applying the above quoted law to the facts of the instant case it is our opinion that Mr. Oliver, being blinded by the lights of the approaching automobile, was not negligent in failing to perceive this unlighted farm wagon located only partially on the pavement. In the language of the Vowell case quoted above, this was such an unexpected and unusual obstruction that defendant’s insured had no reason to anticipate he would encounter such an object on the highway. This dark colored farm wagon, protruding slightly out over the payment, was certainly just as obscure as the lumber truck in the Vowell case, supra, or the darkened automobile in the Fontenot case, supra. See also the recent case of Holt v. All State Insurance Company, et al., 131 So.2d 348 (3rd Cir. La.App.1961) and LeBlanc v. Southern Farm Bureau Cas. Ins. Co., et al., 104 So.2d 279 (1 Cir. La. App. 1958) in which cases the law of the Vowell case was applied. See also 5 — A Am.Jur., Verbo, Automobiles Sec. 332 and 22 A.L.R.2d 298-300 for a general discussion of the degree of care required of a driver who is blinded by lights.
Having concluded that defendant’s insured was free of negligence, it is actually unnecessary that we discuss defendant’s alternative plea of contributory negligence on the part of plaintiff, but in view of our factual finding that this accident occurred after dark, it is clear that the operation of this unlighted wagon on the highway was a proximate cause of the accident. D & D Planting Co. v. Employers Casualty Co., 240 La. 684, 124 So.2d 908. Plaintiff’s contention that he was, in effect, a guest passenger has no merit. Even under plaintiff’s own version of the facts, he took the reins while Vincent Ceasar rolled a cigarette and plaintiff had been driving the wagon for 5 minutes, and was still driving it, when the wreck occurred. Clearly plaintiff was operating the wagon and had *317 it under his control. His negligence while doing so is a bar to his recovery.
For the reasons hereinabove set forth, the judgment appealed from is reversed and this suit is dismissed at plaintiff’s cost. All costs of this appeal are assessed against the plaintiff.
Reversed and rendered.
FRUGÉ and HOOD, JJ., concur in decree.
On Application for Rehearing.
En Banc. Rehearing denied.