SAVOY, Judge.
This is an appeal from a judgment of the Fifteenth Judicial District Court rendered in favor of plaintiff, Paul Harry Lawrence, against defendants, Robbley Joseph St. Pierre, Winn-Dixie Louisiana, Inc. and Fidelity and Casualty Company of New York, in solido, in the sum of $60,348.00. All three defendants appealed suspensively. Plaintiff did not appeal or answer the appeal.
This suit results from an automobile accident which occurred in Acadia Parish, Louisiana, on December 20, 1965, at approximately 5:15 A.M. during hours of *330 darkness, on Interstate Highway 10, on the Bayou Nespique Bridge. Bayou Nespique, at that point, is the dividing line between Acadia Parish and Jefferson Davis Parish. The weather was cold, clear and crisp, and the surface of the bridge was covered with a sheet of ice which had formed shortly before the accident.
Interstate Highway 10 is a four lane divided highway, running east and west at that point, with two lanes for east-bound traffic and two lanes for west-bound traffic. The bridge serving the west-bound traffic is rather long and gradual in elevation. Approaching the bridge from the ■east, there exists a gradual curve approximately three-fourths of a mile from the hase of the bridge. The range of vision to the bridge from the vicinity of the curve is clear and unimpeded. The trial judge stated that he visited the scene during daylight hours, and that from a distance of approximately eight-tenths of a mile and even before reaching the curve, the bridge ■can be seen clearly and without obstruction.
Just prior to the accident in which plaintiff was involved, Robert M. Angers, driving his automobile in a westerly direction, lost control of his vehicle and ended up with the engine stopped, at or near the crest of the bridge with his vehicle facing generally south, and in the center of the bridge more or less straddling both westbound lanes of traffic, in such a manner that made it impossible for other vehicles approaching from the east to pass. While in this position, and shortly thereafter, another vehicle approaching from the east and being driven by Dassas J. Provost, Jr. collided with the Angers vehicle. Mr. and Mrs. Angers testified that all of the lights on their vehicle were burning when it came to rest. All occupants of the Provost vehicle testified that the Angers vehicle was without lights. The Provost vehicle ended up generally along the east side of the Angers vehicle, facing south to southwest. The lights on the Provost vehicle, both front and rear, remained lit. Sometime thereafter, a Volkswagen automobile approached from the east and came to a stop on the eastern slope of the bridge short of the location of the Angers and Provost vehicles, without colliding with anyone. Shortly thereafter, an automobile driven by plantiff, Paul Harry Lawrence, approached the scene, also from the east, and came to a stop, also without colliding with anybody. The Lawrence vehicle came to a stop in the outside west-bound lane, approximately midway between the east base of the bridge and the crest of the bridge. While all these vehicles were in the positions indicated, a large van-type tractor and trailer owned by Winn-Dixie and driven by Robbley St. Pierre, also approaching from the east, collided into the rear of plaintiff’s vehicle causing certain injuries to plaintiff, for which the complains herein. St. Pierre’s truck attempted to avoid plaintiff’s vehicle by going around it, but the rear right wheels of the van collided into the rear of plaintiff’s car causing the car to make a 180° spin. The interval of time between the Angers-Provost collision and the Lawrence-St. Pierre collision was between four and six minutes.
Occupants of Angers and Provost vehicles testified that when they heard the roaring sound of the Winn-Dixie truck approaching from the east, all of them proceeded down the bridge in the opposite direction, except Mr. Guidry who was a passenger in the Provost car. In an effort to stop the Winn-Dixie truck and prevent another collision, Mr. Guidry proceeded east down the south side of the west-bound lane of traffic of the bridge toward the truck, waiving his arms and hands, and, as he testified, a blue cap which he had in his hand. St. Pierre testified that he saw someone coming down the bridge waiving a flashlight. Mr. Provost testified that immediately after his collision with the Angers car he looked for his flashlight and could not find it, but after the Lawrence-Winn-Dixie col *331 lision, he returned to his car and found that his flashlight had reappeared and was on the front seat of his car in the driver’s seat. The trial court said that although it had no reason to doubt Mr. Guidry’s testimony, in view of the testimony of Mr. Provost, as well as other witnesses in the Lawrence car, who also saw the flashlight, the court concluded that someone was flagging with a flashlight coming down the eastern slope of the bridge.
Defendants attempt to bring this case under the exception to the general rule of the standard of care of a night driver, as stated in the case of Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909:
“Our rule that a motorist traveling on the public highways after dark or during a rainstorm, fog, or other abnormal condition, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume that the road is safe for travel even at night. But that exception to the general rule is itself subject to the exception that a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway. * *
Counsel for defendants argues that the conduct of the defendant St. Pierre brings him under exceptions to the general rule, because of the unusual and extraordinary circumstances which were found to exist in this case, specifically, the existence of the sheet of ice on the surface of the bridge. He contends that St. Pierre did everything that he reasonably could under the circumstances to avoid the accident, and that the collision was caused by the sheet of ice. The trial court disagreed, and found that had St. Pierre maintained a proper lookout, he could have and should have seen the multiple activities on the bridge, consisting of the Provost vehicle with its lights on, the Angers vehicle at or near the crest of the bridge, which, even though possibly without lights, should have been seen with the Provost car lights partially shining on it and the bridge railing, and the numerous people who were out of their vehicles walking around the area.
We agree with the conclusion reached by the trial court.
Counsel for defendants argues that because of the fact that the activities on the bridge were elevated, they were out of the range of St. Pierre’s lights which were on dim. However, it was a clear night and St. Pierre’s vision was unimpeded for over three-quarters of a mile, and he should have seen the lighted vehicles and activities on the bridge even without the aid of his lights had he been keeping a proper lookout, and should have taken the necessary precautions in slowing down his vehicle to avoid the impending collision with plaintiff.
This Court notes that in the cases cited by defendants as authority for bringing this case under the exception to the general rule, there existed fog or other visual impediments and the vehicles stalled on the road were without lights or reflectors. Those conditions did not exist in this case.
QUANTUM.
Plaintiff sustained substantial and severe injuries. He suffered one and possibly two ruptured discs impinging upon nerves in the neck, and will require extensive surgery, which, if successful, will still leave some permanent disability as a result of the injury. Additionally, Dr. Webre, an orthopedist, and Dr. Kirgis, a neurosurgeon, found that the nerves of the neck were stretched and scarred, which cannot be alleviated by an operation, and that this caused a permanent disability. Plaintiff suffered a severe traumatic arthritic aggravation at the site of his injuries. He *332 also had a shoulder condition which has apparently resolved itself. He has suffered severe pain as a result of this accident, is presently suffering and will continue to suffer in the future. He has undergone the usual conservative treatment of wearing a cervical collar, being administered muscle relaxants, analgesics, injections and treated with head halter and pulley. He was treated by two general practitioners, Drs. Brunt and Brown. Additionally, he was examined by Dr. James Gilly, orthopedist, Dr. Webre, orthopedist, Dr. Kirgis, a neurosurgeon, and Dr. Levy, also a neurosurgeon. The trial court concluded from the opinions of these doctors that plaintiff has a twenty to thirty per cent disability of the whole body. If a disc operation is performed, and is successful, the permanent disability would be reduced to fifteen per cent.
Plaintiff has also suffered a stretching of a series of large nerves that extend from the spine into the arm called the brachial plexus, which condition causes some permanent disability and cannot be cured by surgery.
Plaintiff works as a bricklayer’s helper, and could possibly return to work after an operation and period of rehabilitation and recovery, but not without pain and discomfort.
The trial court awarded plaintiff $30,-000.00 for pain, suffering and disability. Plaintiff’s earnings for 1965 were approximately $5,000.00, and the trial court awarded him $7,500.00 for loss of wages from the time of the accident to May 18, 1967, and $20,000.00 for future loss of wages. In addition, the trial court awarded $708.00 for medical expenses, $1,500.00 for future medical, and $640.00 for loss of his automobile.
In the recent case of DeLaune v. Lousteau (La.App., 1 Cir., 1966), 193 So.2d 907, writ refused, the Court of Appeal affirmed an award of $74,876.77 to plaintiff where she suffered serious physical disability. After reviewing this case and cases cited by counsel for both parties, we are of the opinion that the trial judge in the instant case did not abuse the great discretion vested in him. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.
For the reasons assigned, the judgment of the district court is affirmed at appellants’ costs.
Affirmed.
LEAR, J., dissents, being of the opinion the accident was unavoidable due to ice forming on the bridge.