172 So.2d 100 (1965)
Thomas WOODS et al.
v.
EMPLOYERS LIABILITY ASSURANCE CORPORATION et al.
No. 6310.
Court of Appeal of Louisiana, First Circuit.
February 1, 1965.
Rehearing Denied March 8, 1965.
*101 Joseph F. Keogh, Franklin & Keogh, Robert W. Smith, Seale, Hayes, Smith & Baine, Calvin E. Hardin, Jr., Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, W. K. Christovich, Christovich & Kearney, New Orleans, for appellants.
Mouser & Mouser, Oakdale, Horace C. Lane, G. T. Owen, Jr., of Borron, Owen, Borron & Delahaye, Charles W. Wilson, of Watson, Blanche, Wilson, Posner & Thibaut, Robert J. Vanderworker, of Taylor, Porter, Brooks, Fuller & Phillips, Robert S. Cooper, Jr., H. Alva Brumfield, Sylvia Roberts, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ[*]
*102 LANDRY, Judge.
This matter and the companion suit entitled Johnson, et al., v. Woods, et al., La. App., 172 So.2d 116, consolidated for trial and appeal, arise from two separate automobile accidents, the first of which occurred at approximately 9:25 P.M., Sunday, April 22, 1962, on that portion of U.S. Highway 190 situated in Pointe Coupee Parish, known as the Atchafalaya Spillway Bridge, when a parked 1954 Ford automobile, owned and being operated by plaintiff, Thomas Woods, was struck from the rear by a 1961 Ford owned and being driven by defendant, Leroy Johnson. The second accident transpired within a few minutes of the first, when a semitrailer owned by Herrin Transportation Company, (sometimes hereinafter referred to simply as "Herrin"), and being driven by its employee, Richard D. Daniels, ran into the wreckage produced by the prior mishap.
Vehicles other than those belonging to Woods and Johnson were damaged by the Herrin truck (several motorists having stopped at the scene during the interval elapsing between the first and second accidents) consequently numerous law suits resulted from the aforesaid incidents. We are, however, herein concerned with but two, namely, those in which the Woods and Johnson families, respectively, are plaintiffs and which engendered numerous and complex legal issues as will hereinafter appear.
Woods received no personal injuries as a result of either accident but his vehicle was damaged in both incidents. However, Woods' wife, Ola Mae, sustained personal injuries in each accident. Named defendants in the action instituted by the Woods are: (1) Leroy Johnson; (2) Employers Liability Insurance Company, Johnson's insurer, (hereinafter sometimes referred to as "Employers"); and (3) Herrin, against whom damages are sought in solido for the injuries sustained by Mrs. Woods and the damages to the Woods' vehicle. This matter will sometimes hereinafter be referred to simply as the "Woods suit." In the Woods suit it is contended the initial accident resulted solely from Johnson's negligence in driving at an excessive rate of speed, failing to have his vehicle under control, failing to keep a proper lookout and negligently running into plaintiff's fully lighted parked automobile. The Woods suit also maintains the second accident was solely resultant from the negligence of Daniels who carelessly drove his large truck and trailer combination into the wreckage occasioned by the first collision notwithstanding the presence of lights on numerous parked vehicles, flares which had been set out and the attempts of individuals to flag Herrin's oncoming truck with flashlights.
Leroy Johnson, his wife, Octavia, and his minor children, Leroy, Jr., Theryl Denise and Cheryle Jean, asserting injuries received in both accidents, instituted demands against: (1) Thomas Woods; (2) Connecticut Fire Insurance Company, (sometimes hereinafter referred to simply as "Connecticut"), Woods' liability insurer, and (3) Herrin, claiming damages against all said defendants, in solido. This action will sometimes hereinafter be referred to as the "Johnson suit."
In both the Woods and Johnson suits, Herrin filed third party demands against numerous parties all of which claims have been abandoned excepting the following from whom Herrin seeks contribution, in solido, to-wit: (1) Woods; (2) Connecticut; (3) Johnson; (4) Employers; (5) Insurance Company of the State of Pennsylvania (sometimes hereinafter referred to simply as "Pennsylvania"), liability insurer of the state troopers, Carriere and Langley, who investigated the accidents; and (6) Joseph Ardoin, Town Marshal, Krotz Springs, Louisiana, who assisted Carriere and Langley as will hereinafter appear.
Herrin's aforesaid third party demands concede the negligence of Herrin's driver, Daniels, and are based on the contention the first accident was caused by the joint *103 and concurrent negligence of Woods and Johnson, or by the negligence of one of them, and which said negligence proximately caused the second mishap. On this premise it is argued that Daniels and those responsible for the first accident are joint tortfeasors quoad all damages resulting from the second accident. The third party demand of Herrin charges negligence against Woods and Johnson in essentially the same respects alleged by said principals in their main demands against each other. With respect to Carriere and Langley, Herrin's third party demand is predicated on the contention said parties failed to set out flares upon arriving at the scene and negligently parked their vehicle adjacent to the scene (in opposing traffic lanes) with the lights burning, in such manner as to mislead and confuse approaching motorists, such as Herrin's driver, Daniels, rather than aid them. Substantially the same charges of negligence as are lodged against Carriere and Langley form the basis of Herrin's third party demand against Ardoin.
In substance Herrin's third party demands maintain accident number two was contributed to by four separate entities, namely: (1) Woods and his insurer; (2) Johnson and his insurer; (3) Pennsylvania (representing Carriere and Langley) and Ardoin; and (4) Herrin. On this assumption Herrin claims entitlement to judgment in solido against the three entities other than itself for one-half of any award in favor of the plaintiffs in the Woods and Johnson suits against Herrin.
As defendants in the main demand presented by the Woods suit and also as third party defendants in the third party complaint of Herrin therein, Johnson and Employers plead the contributory negligence of Woods as well as that of Mrs. Woods which latter party is charged with having improvidently remained in an unlighted vehicle parked on the traveled portion of a public highway.
With the issues thus drawn, these consolidated matters understandably provoked a rather lengthy trial in the lower Court, following which our esteemed brother below reached the following conclusions and rendered judgments as noted, to-wit: (1) Johnson was free from fault, accident number one having been caused solely by Woods' negligence; (2) No causal connection existed between the two incidents inasmuch as Carriere, Langley and Ardoin were all free of negligence and accident number two resulted solely from Daniels' carelessness; (3) The injuries sustained by Mrs. Woods were attributable one-half to the first accident and one-half to the second incident, therefore, since Woods was solely responsible for the first accident and Mrs. Woods had not joined Connecticut, she was granted judgment against Herrin in the sum of $4,250.00 (being one-half of the amount due her for personal injuries) and Mr. Woods was awarded judgment against Herrin in the sum of $569.50 (being one-half the amount of special damages found to have been incurred in treatment of Mrs. Woods' injuries); (4) Mrs. Octavia Johnson's injuries resulted solely from the first accident therefore she and her husband were awarded judgment against Woods and Connecticut, in solido, in amounts of $3,000.00 and $216.00, respectively, and their claims against Herrin rejected in toto; (5) Cheryle Jean Johnson's injuries were of such inconsequential and superficial nature, they warranted no award of damages; (6) All injuries to Leroy Johnson, Jr. and Theryl Denise Johnson and the expense to Leroy Johnson incident thereto, were attributable to the second accident consequently judgment was rendered against Herrin in favor of Leroy Johnson, individually, in the sum of $40.00, in favor of Leroy Johnson for the use and benefit of the minors Leroy Johnson, Jr. and Theryl Denise Johnson, in the sum of $250.00 and $100.00, respectively.
The Johnsons have neither appealed nor answered the appeal of any appellant consequently the judgments rendered in favor *104 of Mr. and Mrs. Johnson and their three aforesaid minor children, have become final. No appeal was taken from the judgment of the trial court rejecting the demand of the minor Cheryle Jean Johnson and that judgment has likewise achieved finality.
Woods and Connecticut have appealed that portion of the trial court's judgment decreeing Woods solely responsible for the first accident and have also appealed the award of $3,000.00 to Mrs. Johnson. In this regard it is contended our learned brother below erred in finding Woods solely responsible for the first accident. Alternatively, it is argued the damages awarded Mrs. Johnson are excessive and should be reduced. Needless to say, Woods and Connecticut urge affirmation of that portion of the trial court's decree holding Herrin solely responsible for the second accident.
Mr. and Mrs. Woods have appealed that portion of the judgment decreeing Johnson free of liability and holding Woods solely responsible for the first accident. They further maintain the damages awarded Mrs. Woods in the sum of $8,500.00 are inadequate and judgment should be rendered herein in favor of said plaintiff in the sum of $10,000.00 against Johnson and his insurer on the theory Johnson was guilty of negligence contributing to the first accident. No claim is made that the amount awarded against Herrin should likewise be increased.
Notwithstanding Herrin's devolutive appeals from the awards made against it, no complaint is made as to the amount or extent of any such award. The sole issue raised by Herrin's appeals is that the trial court erred in dismissing said appellant's claims against the hereinabove named third party defendants from whom contribution is sought as joint tortfeasors allegedly responsible, with Herrin, for the second accident. In this regard we note the following appearing at page 7 of the brief filed herein by learned counsel for Herrin, to-wit:
"It suffices to say that, so far as Herrin's appeal is concerned, it will be, and is, confined to Herrin's complaint respecting dismissal of its third party complaint against the three entities named on page 6, supra."
More precisely Herrin maintains the trial court erred in: (1) Failing to find that the first accident was caused by the joint and concurrent negligence of Woods and Johnson; (2) Neglecting to hold that the parties responsible for the first accident proximately caused, at least in part, or contributed to the second incident; (3) Declining to hold the three police officers, Carriere, Langley and Ardoin, guilty of negligence which proximately caused, at least in part, or contributed to the second accident; and (4) Failing to give judgment in Herrin's favor against Woods, Connecticut, Johnson, Employers, Pennsylvania and Ardoin, in solido, for one-half of all awards received by any initial plaintiff against Herrin in either the Woods or Johnson suits. Excepting only the crucial issue whether or not the lights of the Woods vehicle were burning and Woods was attempting to flag approaching traffic with a flashlight at the time of the first impact, the circumstances surrounding the occurrence of the two collisions are virtually without dispute.
The hereinabove mentioned scene of the accidents giving rise to this complex litigation is for all practical purposes a bridge. The evidence reveals the Atchafalaya (Morganza) Spillway is traversed by an elevated highway approximately 3.6 miles in length constructed upon concrete piers designed to raise the roadway above the floodway it traverses. From the record we discern that the highway runs in an easterly-westerly direction and consists of four lanes each twelve feet in width, the two northernmost lanes being devoted exclusively to westbound traffic and the two southernmost lanes being designated solely *105 for travel by eastbound motorists. It further appears these opposing lanes are separated by a central concrete barrier, concave in form and measuring three feet wide at its base by a height of one foot ten inches, its top being rounded and too narrow for a person to walk upon. Immediately adjacent to each outside lane is a curb ten inches in height and sixteen inches in width each said curb being abutted on the outside by a decorative concrete railing rising an additional 38 inches in height. Thus, where it crosses the aforesaid spillway or floodway for a distance of approximately 3.6 miles, the highway in question has no shoulders and, as previously noted, is essentially a bridge. The general nature of the accident site being shown as above noted, we shall proceed to first consider
RESPONSIBILITY FOR THE INITIAL ACCIDENT AS BETWEEN WOODS AND JOHNSON:
It is uncontradicted that Woods, driving westerly along the aforesaid highway on a clear, dark night, experienced motor trouble causing his engine to "stall." The exact nature of the difficulty experienced is not shown in the record and is in truth, immaterial. It suffices that Woods did not voluntarily stop. Upon being unable to restart his engine he permitted his vehicle to coast to a stop, approximately 1.6 miles west of the east end of the bridge, in the right or outside westbound lane of travel adjacent to the aforementioned curb leaving the inside or passing lane entirely free and clear. After unsuccessfully attempting to restart his engine, he procured a flashlight and proceeded to the rear of his vehicle leaving his lights burning. Although he stated his purpose was to warn overtaking traffic of the presence of his vehicle, we believe his subsequent actions (in the light of the testimony hereinafter discussed) preponderates in favor of the conclusion he was more interested in securing aid than in attempting to alert the traveling public to the presence of his vehicle. Some time thereafter a westbound automobile being driven by Andrew Thornton, accompanied by three relatives, approached Woods' parked vehicle. Thornton's testimony is to the effect he observed the lights on the Woods car and also noted Woods flagging traffic with a flashlight. It was stipulated that if Warren and Albert Thornton were called to testify they would aver substantially the same as their host driver. No stipulation was entered with regard to Eddy Thornton, the fourth passenger in the Thornton vehicle. Thornton, however, did not stop but before reaching the west or far end of the bridge conferred with his guest passengers and decided to return and offer assistance to the standed motorist. Upon reaching the west end of the bridge, Thornton reversed his direction, proceeded to where Woods' vehicle was parked, stopped his own car opposite Woods' vehicle and inquired if Woods were in need of assistance. Being a mechanic, Thornton offered to try to start Woods' automobile. He then drove toward the east end of the bridge to where he could reverse his direction, enter the westbound traffic lanes and proceed to the point where Woods' vehicle was parked.
While Thornton was thus enroute to the east end of the bridge to return to the Woods car (a distance of approximately 4.4 miles inasmuch as the nearest possible turn was one-half mile east of the east end of the spillway bridge), Johnson was proceeding westerly along the highway in the right or outside lane at a speed of approximately sixty miles per hour with his headlights on dim. Behind the Johnson car, a car driven by Miss Carolyn Hess, accompanied by her brother James, was proceeding westerly in the same lane of travel as the Johnson car. Miss Hess, desiring to pass Johnson, swung into the passing lane and proceeded by Johnson. After passing Johnson both Miss Hess and her guest passenger became aware they had come abreast of and passed an unlighted car parked in the right or outside lane. They both looked back immediately and saw the Johnson car run into the rear of Woods' parked automobile. Miss Hess intantly *106 brought her car to a stop and backed up to the scene of the accident. Both Mr. and Miss Hess testified unequivocally that upon backing up to Woods' vehicle they noted none of its lights were burning. They further stated that had not Miss Hess been in the passing lane to overtake the Johnson car, the Hess vehicle would have struck Woods as the vehicle was parked with no lights showing. They further denied seeing Woods present upon the highway attempting to warn traffic with a flashlight.
Mr. and Mrs. Woods, however, testified that when their vehicle stopped the lights were left burning. Woods further stated he was standing between his automobile and the bridge railing and upon noting the approach of the vehicles walked to the back of his car into the inside lane of travel and attempted to flag the Johnson vehicle. Woods further stated that Johnson was coming at a fast rate of speed and when the Johnson vehicle was about 40 feet distant it became evident Johnson would not slow down or change his course. To keep from being struck he jumped toward the bridge railing out of the path of the Johnson vehicle which continued forward in the outside lane and crashed into the rear of Woods' parked automobile.
In substance Leroy Johnson testified he was proceeding at a speed of approximately 60 miles per hour with his headlights on dim. The night was clear and the roadway dry. There was some oncoming traffic but none sufficiently near that approaching headlights would materially impair or limit his visibility. He was proceeding in the right or outside westbound lane and simultaneously he and his wife remarked there appeared to be something ahead in the road. Further observation revealed the presence of an unlighted vehicle parked in the right or outside lane approximately 35 feet ahead. Johnson simultaneously observed a person (Woods) running toward him from a position between the parked automobile and the bridge railing with a flashlight in his hand. Almost instantly thereafter the right front: of Johnson's vehicle smashed into the left rear of the Woods automobile. Both Johnson and his wife steadfastly maintain there were no lights burning on the parked automobile and Woods was nowhere in sight until he suddenly emerged from the position mentioned. According to Johnson he almost avoided striking Woods' car and only missed it by "about two feet", his attempt to swerve into the passing lane not being completely successful.
Andrew Thornton testified that upon reaching the scene of the accident after the collision, he observed both rear lights burning on the Woods vehicle. His testimony in this regard is subject to question inasmuch as the record establishes beyond doubt that the left rear tail light on the Woods vehicle was smashed and rendered inoperable by the impact. Moreover, Thornton's testimony was unclear regarding the time it took him to arrive at the scene of the accident. At one time he indicated the police and numerous motorists preceded him, while at another point he stated he arrived before the officers. Upon arrival at the scene he immediately took Johnson to task for not heeding Woods' flashlight warnings which understandably provoked an argument considering he was not present when the accident occurred. Regardless of Woods' actions when Thornton stopped to offer assistance, the evidence clearly preponderates in favor of the conclusion Woods did not have the lights burning on his vehicle at the time of the accident and neither was he behind his car on the highway attempting to flag approaching motorists as he contends. The only disinterested witnesses regarding this all important factor are Mr. and Miss Hess whose testimony strikes us as being straightforward and credible. It appears they are totally without interest herein and stopped at the scene as good Samaritans intent only on affording aid to strangers in distress. We can only conclude that if Woods did have his lights burning when Thornton initially stopped, he turned them off following *107 the latter's departure. Therefore, we adjudge the Woods vehicle was unlighted and Woods was not standing on the highway attempting to warn approaching traffic by waving a lighted flashlight as he contends.
Germane to the issue of Woods' alleged negligence are the provisions of LSA-R.S. 32:313, 1950, (in effect at the time of the accident), which state as follows:
"Whenever a vehicle is parked or stopped upon a public highway, attended or unattended, between one-half hour after sunset and one-half hour before sunrise there shall be displayed upon it two lamps, projecting a white light visible, under normal atmospheric conditions, from a distance of five hundred feet to the front, and projecting a red light visible, under normal atmospheric conditions, from a distance of five hundred feet to the rear."
Also appropos the question before us are the terms of LSA-R.S. 1950, 32:241, subd. B which provide that the driver of a vehicle disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position, shall remove the vehicle as soon as possible and shall be responsible for protecting traffic from such hazard until its removal. We note that the hereinabove quoted statutes are retained in substance in the currently effective Highway Regulatory Act, more particularly LSA-R.S. 32, Sections 314 and 141, subd. B, respectively. Unquestionably the legislature of this state has wisely adopted the foregoing rather stringent requirements for the protection of the traveling public, particularly those motorists traveling upon the congested present day, multi-laned, high speed highways which must be kept free of unexpected obstructions so that the ever increasing volume of vehicular traffic thereon may move freely and safely. We deem violation of these statutes negligence per se. It follows that Woods' negligence in failing to leave his vehicle adequately lighted and neglecting to take other precautions to warn the traveling public of the presence of his vehicle, under the circumstances shown, was a proximate cause of the initial collision.
Johnson's alleged negligent involvement in the first accident is the basis of his asserted liability in both the Woods suit and Herrin's third party demand and is alternatively plead as a defense (contributory negligence) in the Johnson action. In either case the issue involves the simple question of whether Johnson should have seen the Woods vehicle in time to avoid striking it. The record is clear that if Johnson had changed to the inside or passing lane, he could have passed the stalled vehicle in safety.
Johnson was traveling at a lawful rate of speed in the right or outside lane with his lights on dim, which he had a right to do. Nothing in the record indicates his lights were inadequate or deficient in any respect. A motorist has a right to assume a highway is safe, even at night. Those seeking to establish Johnson's negligence rely heavily upon Vowell Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909, from which we quote with approval, the following:
"Our rule that a motorist traveling on the public highways after dark or during a rainstorm, fog, or other abnormal condition, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume that the road is safe for travel even at night. But that exception to the general rule is itself subject to the exception that a motorist traveling by night is not charged with the duty of guarding *108 against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1.
"The case of Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377, involved a truck parked on the dirt shoulder of the paved highway, with one of its front wheels resting on the shoulder and the other front wheel and both rear wheels resting on the pavement. The body of the truck extended at an angle across the right traffic lane about 5 feet from its outer edge, with no lights or flares to warn motorists of its presence. The plaintiff was proceeding along this partially blocked traffic lane when the parked truck suddenly loomed up out of the darkness; and because of traffic approaching from the opposite direction he had no alternative than to apply his brakes, but being then too close was unable to avoid running into the rear end of the parked truck. We held that the plaintiff was not negligent in failing to see the truck sooner than he did under the then prevailing circumstances.
"In the case of Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720, we affirmed the decision of the Court of Appeal holding free from negligence the motorist traveling on a straight highway at 45 miles per hour on a dark evening, unable to see a darkened truck until he was almost upon it and unable to take the risk of going to his left due to approaching traffic, and with no reasonable alternative but to collide with the parked truck. La. App., 33 So.2d 95."
It is suggested a motorist must operate his vehicle at such speed and in such manner that it can be stopped within the range of vision provided by his headlights and any motorist failing to observe a disabled vehicle on a straight, level highway with good visibility prevailing, in time to avoid a collision, is guilty of negligence proximately causing the accident In this regard reliance is placed on the well established rule that a motorist is held to have seen that which he could have seen by the exercise of ordinary care and prudence and that the primary duty of a motorist is to keep a sharp lookout ahead to discover the presence of those who might be in danger.
The synthesis of these contentions is that a motorist who strikes any stationary object in the highway is negligent and responsible for resulting damages, either because he was not traveling at a reasonable rate of speed under the circumstances, or he did not have his vehicle under control, or he did not timely see what he should have seen in time to avoid striking the object. The sole exception conceded is where the object completely blocks the whole highway, which exception is alleged to be inapplicable herein inasmuch as the Woods vehicle blocked only one of the westbound traffic lanes. We believe the latter contention patently without merit inasmuch as any object which tends to impede traffic or render more hazardous the flow of vehicular traffic upon a public highway must be deemed an obstruction. See e. g. LSA-R.S. 14:97.
Counsel for the various parties adverse to the Johnsons have cited numerous authorities in support of the contentions advanced. Many of the authorities relied upon are distinguishable from the present case on their facts. Notably, in Eubanks v. Wilson, La. App., 162 So.2d 842 and King v. Risdon & W. E. Holoman Lumber Co., La.App., 76 So.2d 548, the disabled vehicles were lighted. In Washington Fire & Marine Ins. Co. v. Employers Liability Assurance Corporation, La.App., 94 So.2d 162, the moving vehicle was traveling 45 miles per hour in a 25 mile per hour zone, with defective headlights. Other authorities involved collisions with a moving vehicle or vehicles stopped or slowed down preparatory to making a turn or other lawful maneuver. In still other instances weather conditions *109 demanded a reduction of speed and greater care. Still other cases involved pedestrians, cattle on roads where they were not prohibited by law and collisions in midday sunlight.
We are convinced the present case falls under the exception to the general rule which imposes liability on a motorist colliding with the rear of a preceding vehicle. The well established exception is that a motorist traveling at a lawful speed at night is not charged with the duty of guarding against striking an unexpected or unusual obstruction which he had no reason to anticipate he would encounter on the highway. Vowell v. Manufacturers Casualty Insurance Company, et al., 229 La. 796, 86 So.2d 909; Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377; Moore v. State, La.App., 136 So.2d 751. There is nothing in the instant case to indicate Johnson's failure to exercise ordinary care, or that he failed to maintain a proper lookout, or that the parked Woods vehicle could have been more timely seen by the exercise of ordinary vigilance. Failure to see a stalled and unlighted vehicle on a public, open highway, where there are no special conditions requiring a reduction in speed or the exercise of extraordinary care, does not constitute negligence. Brunson v. Royal Indemnity Company, La.App., 166 So.2d 656.
Therefore, we conclude the sole proximate cause of the first accident was the negligence of Thomas Woods as hereinabove shown.
HERRIN'S THIRD PARTY DEMAND AGAINST PENNSYLVANIA AND ARDOIN.
This demand is based on certain alleged negligent acts and omissions of the officers, Carriere, Langley and Ardoin, following their arrival at the scene.
After stopping at the scene of the accident, Miss Hess (a practical nurse) remained to administer to the injured while her brother, James, proceeded to the Town of Krotz Springs, some five miles westerly to summon the police. In Krotz Springs Hess contacted Sergeant Leon B. Carriere, Trooper L. C. Langley and Joseph Ardoin, Town Marshal, Krotz Springs, whom he found in their vehicles near the Krotz Springs Bridge which spans the Atchafalaya River. Upon being advised of the accident on the spillway bridge, Carriere requested Ardoin to summon a tow car or "wrecker" and proceed to the scene in his own vehicle. Carriere's patrol car was not equipped with a dome light (which we understand to mean the red blinking or revolving signal light commonly seen atop police vehicles to identify them as such when in official use); its only identification as a police car being decals affixed to each side and which were not visible at night. Ardoin's vehicle, however, was equipped with such an identification device measuring approximately nine inches across its front and mounted on top of the automobile. Facing forward the light showed two red reflectors, one on each end, which alternatively blinked off and on. To the rear a smaller red light was visible.
Carriere parked his vehicle in the left or inside eastbound traffic lane, adjacent to the abutment or divider which separated opposing traffic, leaving his lights burning; there being some dispute as to whether he left his parking lights or headlights on. Ardoin brought his vehicle to a halt immediately to the rear of Carriere's vehicle in the same traffic lane, leaving his exterior dome signal atop his vehicle in operation alternately flashing its red signal off and on. Hess, upon returning to the scene parked his vehicle immediately behind Ardoin's. The record does not conclusively indicate whether his lights were left on or off.
Immediately upon arrival, Carriere, being Langley's senior, ordered the latter to remain in the eastbound lanes to alert motorists to the presence of the police vehicles parked in the inside lane and instruct all eastbound drivers to pass the scene in the right or outside eastbound lane only. Carriere *110 then began a survey of the situation to determine what was necessary to clear the roadway to permit the flow of traffic which was somewhat heavy, it being the night of Easter Sunday. He noted the Woods vehicle had come to rest in the inside westbound lane, its front facing the concrete center abutment and its right rear wheel approximately on the centerline of the westbound lanes. A short distance behind or east of the Woods vehicle, Johnson's car had come to rest facing in a northwesterly direction with its rear end closest to the abutment, its right front being just across or to the left of the centerline of the westbound roadway. A third car, apparently belonging to a passerby, Thornton, was in the vicinity of the Woods and Johnson vehicles and upon learning that it was not involved in the accident, Carriere requested its driver to move it from the scene.
Meanwhile Ardoin, upon arrival at the scene immediately proceeded to cross the center barrier and walk to a point in the eastbound lanes approximately 100 feet east of the Johnson vehicle where he found two motorists, Denver L. Harless, Jr. and Richard L. LeBlanc, flagging westbound traffic with flashlights. Ardoin requested LeBlanc to go to Carriere's vehicle and return with flares while he, Ardoin, remained with Harless at the position noted and, using his own flashlight, assisted Harless in flagging approaching traffic.
Before LeBlanc returned with the flares a westbound motorist, Crow, approached and noting the activity slowed his vehicle to a virtual halt in the outside lane approximately 100 feet east of the Johnson vehicle apparently awaiting instructions from Ardoin as to whether or not he should proceed. At about this same time another motorist, Lee, following Crow at a slow pace, pulled into the left lane in an attempt to pass Crow's stationary or slowly moving vehicle, but noting the obstruction ahead in the left lane attempted to pull into the right lane behind Crow. When Lee was astride the centerline of the highway his vehicle was struck from the rear by the oncoming Herrin truck which shoved Lee's vehicle ahead into the wreckage already strewn upon the highway, striking other parked vehicles and killing LeBlanc who was evidently returning with the flares requested by Ardoin.
The record is uncontradicted to the effect that numerous westbound motorists safely and successfully passed the scene without mishap by carefully threading or snaking their way around the wreckage of the Johnson and Woods vehicles after having been warned by Harless and LeBlanc's action. After Ardoin's arrival some four or five westbound vehicles also successfully negotiated the scene prior to the chain reaction impacts resultant from Herrin's truck striking the rear of the Lee automobile. The record shows that not more than four minutes time elapsed from the officers' arrival until the second collision occurred.
As previously mentioned the negligence of Herrin's driver, Daniels, is conceded, as indeed it must be from the evidence of record, a detailing of which is unnecessary in view of the concession. However, Herrin's third party demand which seeks to hold the officers as co-tortfeasors responsible for the second collision is predicated principally upon the failure of Carriere, Langley and Ardoin to set out flares. It is further contended, however, that by parking their vehicles in the inside eastbound lane in the positions mentioned, the lights from said vehicles confused Daniels thus contributing to the accident.
Learned counsel for Herrin, while contending vigorously the officers were negligent in the respects alleged, nevertheless cites no authority, statutory or juridical, in support of the proposition an investigating officer is guilty of tortious conduct in failing to immediately set out flares at the scene of an accident at night. It is of the utmost significance that neither officer so charged was responsible for the accident which obstructed the highway. They were merely present in their capacities as officers of the law whose duty was to investigate the matter and clear the highway of the obstruction *111 at the earliest possible moment. While we deem it their duty to take charge of supervising removal of the injured and clearing the highway, we cannot say that their first concern, irrespective of conditions noted, is to set out flares and that so failing they are liable for the consequences of such remission. That a person not responsible for an accident may render himself liable for damages occasioned by his negligence unrelated to the first incident, cannot be gainsaid, provided, of course, his action be shown to have proximately caused the injury resultant from his own negligence or breach of care. We believe the test applicable in the case of such officers is whether their actions were reasonable and prudent in the light of the surrounding circumstances and if not, whether the conduct complained of is causally related to the injuries which resulted therefrom.
Under the circumstances shown, we fail to see wherein either of the officers were remiss in failing to set out flares immediately upon their arrival at the scene. Carriere, in charge of the investigation, stated his first concern was for those injured and secondly to make a survey of the situation in order to determine what was necessary to clear the highway in order that westbound traffic would not be unnecessarily delayed. After detailing Langley to flag eastbound traffic to prevent an accident involving the parked police cars, he made inquiry as to persons injured and requested Thornton to move his vehicle (which was apparently parked near the Woods and Johnson cars) if it was not involved in the accident. He spoke briefly with the drivers, Woods and Johnson and was in the act of walking toward Langley's position when the second accident occurred.
On arrival Ardoin observed two motorists in the act of alerting approaching westbound vehicles by using flashlights as signalling devices. He thereupon joined one and requested the other to go for flares. We fail to see wherein he could have done more under the circumstances. Other motorists had been warned by this procedure both prior and subsequent to Ardoin's arrival and no mishap occurred until Daniels, apparently oblivious to the lights and vehicles upon the highway, observed nothing unusual until his truck traveling at a speed estimated at between 55 and 65 miles per hour was approximately 100 feet from the rear of Lee's automobile at which time Daniels belatedly and vainly applied his brakes in an attempt to stop. We believe that Ardoin's decision to put out flares was not untimely or negligently made under the circumstances indicated. Moreover, since Daniels obviously failed to timely notice the presence of numerous stopped vehicles with lights burning, the police car with its flasher light operating and Ardoin and Harless attempting to warn him with flashlights, it is highly questionable that flares would have been effective.
The contention that Daniels was confused by the lights on the police cars parked in the opposing eastbound lanes is totally unsupported in the record. Daniels was not called to testify consequently whether he was or was not befuddled by such circumstance can never be known. As third party plaintiff, it was incumbent upon Herrin to establish by a preponderance of evidence its charges of negligence against Carriere, Langley and Ardoin in this respect. This it has not done, consequently its third party demand based on such alleged negligence must fall.
THE CLAIM OF MR. AND MRS. WOODS, PLAINTIFFS,' FOR INCREASED AWARDS.
In his brief learned counsel for the Woods complains as follows:

"III.
"That the Trial Court erred in fixing the damages due appellant, Ola Mae Woods, by appellee, Leroy Johnson, should Johnson be guilty of negligence proximately causing the accident sued upon, at $4,250.00, as this amount is inadequate and should be raised to $10,000.00."
*112 We note in esteemed counsel's prayer the following:
"* * * It is our primary concern in this matter to pray that this Honorable Court reverse the Trial Court's decision dismissing plaintiffs-appellants suit and claim against defendant-appellee, Johnson, and render judgment against said defendant-appellee, Leroy Johnson, and his insurer, and in favor of plaintiffs-appellants, Thomas Woods and Ola Mae Woods, in an amount at least equal to the $4250.00, plus interest, for Ola Mae Woods and $569.50, plus interest, for Thomas Woods, as stipulated by the Trial Court. However, we submit to this Honorable Court that the damages sustained by plaintiffs-appellants far exceed a total quantum of $8,500.00 plus specials and that judgment should not only be rendered herein against defendant-appellee, Johnson, and his insurer, but that said judgment should be in the amount of $10,000, plus interest, for plaintiff-appellant, Ola Mae Woods, and $569.50 for Thomas Woods, plus interest, in view of the very serious nature of plaintiff-appellant's, Ola Mae Woods, injuries."
Having absolved defendant Leroy Johnson of liability in the initial accident, and appellants Woods having failed to pray for an increase in the judgment obtained against defendant Herrin, there is no basis for considering the Woods' appeal for an increase in the award of the trial court. Johnson's exoneration also obviates the necessity of our considering the plea of contributory negligence tendered as a defense against the claim of appellant, Ola Mae Woods, by defendants, Johnson and Employers.
THE APPEAL OF THOMAS WOODS AND CONNECTICUT, DEFENDANTS, IN THE JOHNSON SUIT.
Dual issues are presented by this appeal, namely (1) the trial court erred in finding Woods guilty of negligence contributing to the first accident, and (2) the award of $3,000.00 to plaintiff Octavia Johnson for personal injuries is excessive and should be reduced.
The record is clear that Octavia Johnson's injuries were received as a result of the first accident alone. Mrs. Johnson was taken to a hospital in Baton Rouge, Louisiana, shortly after the accident. There she was attended by Dr. James A. Thom, III, a general surgeon who was on emergency duty at the time. Dr. Thom had practically no notes to refresh his memory of the treatment administered the patient. His testimony reveals he found Mrs. Johnson's injuries were primary facial lacerations the exact nature and extent of which he was unable to recall. He administered one or two "shots", sutured the lacerations, and prescribed other medication for pain. Dr. Thom stated he did not consider it necessary to hospitalize the patient excepting that she was from "out of town" and if he kept her in the sanitarium he could better "follow up the case for a few days." Four days after her admission to the hospital, Mrs. Johnson was released and Dr. Thom never saw her thereafter. A reading of Dr. Thom's testimony indicates he considered said plaintiff's injuries relatively minor, an error which we believe attributable to his failure to keep more accurate notes, as will hereinafter appear.
Following her discharge from the hospital, Mrs. Johnson returned home and consulted Dr. George Mowad who prescribed medication for plaintiff's headaches and ordered bed rest for a few days. The number of visits to Dr. Mowad is not disclosed and neither did the Doctor appear as a witness. The record indicates plaintiff received a severe gash approximately four inches in length commencing at about the center of her chin and extending up the right cheek. Plaintiff stated the wound was extremely painful and has left that area numb to the touch. Her husband testified the chin and cheek were cut "clear through" so that Dr. Thom had to sew the wound on the inside as well as the outside. Mr. Johnson further *113 stated that at the time of the accident, it appeared his wife "had something like another mouth on the side." The testimony of Miss Hess, who examined Mrs. Johnson at the scene, is to the effect Mrs. Johnson was stunned or unconscious and bleeding so profusely from facial wounds that she, Miss Hess, and LeBlanc attempted to administer to her as best they could under the circumstances.
While there are no photographs of Mrs. Johnson appearing of record, we note that our learned colleague below examined plaintiff's face in open Court. It would appear from the record he considered plaintiff's residual scars disfiguring and on this basis, in addition to the pain and suffering plaintiff sustained, he considered an award of $3,000.00 appropriate.
Our own independent consideration of the record leads to the conclusion the amount granted was not excessive.
HERRIN'S THIRD PARTY DEMAND AGAINST WOODS AND JOHNSON.
This demand is based on the contention that Woods and Johnson, or one of them, caused the first accident which, at least in part, was causally related to the second therefore either or both said third party defendants were co-tortfeasors with Herrin quoad the second accident and consequently amenable to contribution for one-half the amount for which Herrin might be cast.
Considering our judgment relieving Johnson from responsibility for the first accident, Herrin's third party demand against said third party defendant and his insurer, "Employers", must be rejected.
In substance Herrin argues the first accident was a sine qua non of the second consequently Woods' negligence in causing the first mishap was, perforce, a contributing cause of the second.
Herrin's position is based on the landmark decision of Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So. 2d 298, wherein the facts were that a tractor-trailer, left without signal flags, during a drizzling rain, on the traveled portion of a highway (although there were shoulders 15 feet wide), after a lapse of eight or ten minutes, was struck from the rear by a truck unable to swerve into the other lane because of an oncoming vehicle. The bailor of the moving vehicle sued the owner of the parked vehicle and his insurer. Contributory negligence of the bailee's employee was not imputable to the bailor, but the court of appeal, finding both drivers negligent, exonerated the defendant on the ground its driver's negligence in parking the disabled vehicle on the highway had become passive and was too remote to constitute a contributing cause of the accident therefore the sole proximate cause of the accident was the negligence of the driver of the moving vehicle. The Supreme Court granted writs and on review reversed the judgment. In so doing, the Supreme Court repudiated those cases which, by application of the doctrines of passive negligence and intervening independent causes, insulated the initial tortfeasor from liability to innocent victims. The Supreme Court pointed out that frequently more than one legally responsible cause can and does contribute to a vehicular collision and the mentioned doctrines as stated in some prior jurisprudence tends to place undue emphasis on the chronology of the negligent acts and omissions.
The views thus expressed in Dixie Drive It Yourself Sys., supra, were reiterated in the recent case of Vidrine v. General Fire and Casualty Company, (Third Circuit), La. App., 168 So.2d 449.
While we are in accord with the jurisprudence announced in the cited cases, we find said authorities inapplicable herein considering the instant case is clearly distinguishable on its facts.
We believe the rationale of Dixie Drive It Yourself Sys., supra, to be that negligence, though passive, subjects the guilty party to liability for all injury resultant *114 therefrom which can be reasonably foreseen or anticipated to flow from such action, notwithstanding the independent intervening negligence of another. Stated otherwise, we believe the cited case authority for the proposition that mere chronology of events cannot be relied upon by the passively negligent defendant who seeks escape from liability on the ground that subsequent actions of a third party caused the injury. Though one's negligence may be passive and have come to rest, it nevertheless subjects one to liability for all resulting injury within the protective scope of the duty or burden of care that has been violated, when the subsequent negligence of another in combination therewith produces injury to an innocent third party.
The record in the instant case is uncertain as to the precise time lapse between the two accidents. However, the events which transpired between the two incidents furnishes some indication regarding the time interval involved. Immediately following the first accident, Miss Hess stopped her car and backed up to the scene. She remained there to administer aid while her brother proceeded a distance of approximately four or five miles where he encountered the police officers who immediately drove to the scene, parked their vehicles and commenced their investigation. Approximately four minutes later the second accident transpired. We believe it safe to assume that at least fifteen minutes elapsed between the two incidents.
In the instant case we believe the time interval to be of considerable importance in that it eliminated the possibility of considering the two accidents as being in fact one or, in other words, that they were so close together in time and so identical in attending circumstances they may be considered "so inextricably interwoven" they cannot be disassociated from each other. See Lynch v. Fisher, et al, La.App., 41 So.2d 692; same case at 34 So.2d 513.
The distinguishing feature between the present case and the Dixie Drive It Yourself case, supra, which learned counsel for Herrin has failed to consider is that although there was a time lapse between the negligent parking and the ensuing collision, the circumstances attending the continuing negligence of the driver of the tractor-trailer remained the same until the moment of impact. In that case the continuing negligence was a cause in fact of the accident considering the rule violated was intended to prevent the exact type of accident which resulted.
In the present case, Woods' negligence in failing to leave his lights burning or warn approaching traffic was the cause of the initial impact. Thereafter, however, circumstances changed materially before the Herrin truck arrived at the scene. As Herrin's driver approached at least three cars were parked to the east or behind Johnson's vehicle, all with their lights burning. Ardoin and Harless were in the westbound lanes alerting approaching traffic with flashlights. On the inside eastbound lanes opposite the Johnson car, Carriere's patrol car was parked with at least its parking lights burning and behind said vehicle was Ardoin's police car with its red dome light flashing. In addition, Crow, whose vehicle was approximately 100 feet to the east of the Johnson car, stated he observed the approach of the Herrin truck in his rear view mirror and began frantically pumping his brakes to afford additional warning to the approaching motorist. Witnesses testified they observed the lights at the scene from distances estimated at from one-half to one mile away and had no difficulty in stopping as they reached the site of such confusion.
Nothing in the record justifies the conclusion the second accident could have been avoided had Woods discharged his duty by leaving the lights burning on his vehicle. It is manifest that the presence or absence of lights was not a factor in the second accident. Assuming Woods had joined Ardoin and Harless in attempting to signal motorists with a flashlight the second accident would not have been averted. We believe it safe to state that from the record the scene was lighted up like the proverbial Christmas tree.
*115 The evidence is uncontroverted to the effect the truck driver, Daniels, was wearing dark glasses. An insulin kit and other medicine was found on the seat of his truck; prior to the accident he had been observed operating his truck as though he were falling asleep; he displayed a morbid and unnatural disregard for the serious consequences of his actions, particularly since the collision resulted in the death of one person; and he left the scene and went to a cafe notwithstanding the officers' admonition to remain for questioning. It is impossible to determine what caused Daniels to disregard or timely fail to observe the scene depicted. We believe it suffices to say that any driver maintaining even a semblance of proper lookout could and should have been alerted to the existing circumstances.
It is contended that one who is responsible for an initial accident resulting in the obstruction of a highway triggering a "pile up" or subsequent multiple collisions is responsible for all such accidents. In so arguing counsel relies both on the Dixie Drive It case, supra, and Steagall v. Houston Fire & Casualty Co., La.App., 138 So.2d 433, the facts of the latter authority being remarkably similar to the former. In the Steagall case, supra, the driver of a parked car which obstructed a street was held responsible for an accident which resulted. The petition of a guest passenger in the moving vehicle was held to state a cause of action against the driver of the parked car. As in the Dixie Drive It case, supra, the negligence continued to the time of the accident and was the cause thereof. The same can be said of Moses v. Central Louisiana Electric Company, 5 Cir., 324 F.2d 69, a federal case remanded because of an erroneous charge by the trial court. In the cited case, suit was instituted on behalf of the survivors of a passenger killed when the airplane in which he was riding struck a transmission wire. There was evidence from which the jury might have concluded the wires and supporting towers were improperly installed. In response to questions by the jurors, the trial court gave certain instructions relative to proximate cause and passive negligence. The Circuit Court of Appeal, citing the Dixie Drive It case, reversed on the ground the "charge as a whole seems to leave the definite impression that the passive and static presence of the wires was not to be considered negligence if Newton chose to approach the landing under and in close proximity to them, as was the custom." It will be noted that this case also presents a continuing condition for which defendant alone was responsible.
We believe the Supreme Court's repudiation of the principle that passive negligence exonerates one from liability is soundly based both in reason and in law. Negligence constituting the cause of an accident may consist of acts of omission as well as commission, or combinations of the two. Acts of omission are almost always passive and continuous, whereas acts of commission are more frequently active and precipitate. We discern no purpose to be served by characterizing the negligent act as passive or active. The real inquiry must be whether the negligence in question (active or passive) either independently or in combination with the negligence of others, caused the injury to plaintiff.
Applying the foregoing test, we fail to see wherein Woods' negligence in failing to give warning or adequately light his parked vehicle, can be held a cause in fact of the second accident. There being no causal connection between Woods' negligence and the second accident, he was not a joint tortfeasor with Herrin's driver consequently said third party plaintiff's claim against Woods and his insurer must fall.
We find the judgment of the trial court correct in every respect. Accordingly, the judgment is affirmed at the cost of appellant, Herrin Transportation Company.
Affirmed.
NOTES
[*] Due to the subsequent death of Herget, J., this opinion is rendered by Ellis, Lottinger, Landry and Reid, JJ.