LANDRY, Judge.
Seaboard Fire & Marine Insurance Company (Seaboard), insurer of Earl F. Sur-ratt, appeals from judgments rendered in these consolidated cases in favor of (1) Grinnel Mutual Reinsurance Corporation (Grinnel), insurer of a vehicle owned by Donnie Collett; (2) Safeco Insurance Company (Safeco), insurer of a vehicle belonging to Robert Rich, and (3) Gladys Brown, guest passenger in Rich’s vehicle, for property damage and personal injuries sustained in a rear end collision involving the three mentioned vehicles. We affirm the judgment rendered below.
The accident spawning this multiple litigation occurred on the Atchafalaya Spillway Bridge, on U. S. Highway 190, approximately six miles west of Krotz Springs, Louisiana, at about midnight, August 31, 1968. The accident occurred on one of the dual two-lane bridges which span the spillway from east to west. The night was clear and the roadway was dry. The accident happened when Surratt swerved his 1967 Chevrolet pick up truck from the outside eastbound lane into the inside eastbound lane to avoid a stalled automobile situated in his lane of travel; Before Surratt completed his lane changing maneuver, his vehicle was struck from the rear by Collett’s eastbound 1960 Chevrolet which Collett was driving in the inside eastbound lane. Within a few seconds of the initial impact, Collett’s vehicle was struck from the rear by Rich’s 1966 Ford being driven by Rich in the inside east *452 bound lane. The collision propelled Col-lett’s car into the rear of Surratt’s vehicle a second time. Mr. Collett’s wife accompanied him as his guest passenger. Mr. Surratt died before trial. His deposition was not taken prior to his demise.
Rich instituted suit against Seaboard. Mrs. Brown sued Seaboard and Safeco for personal injuries. Seaboard third partied Rich. Safeco third partied Surratt and Collett.
Grinnel, as subrogee of Collett, brought an action against Safeco, Rich, Surratt and Seaboard to recover the cost of repairing Collett’s automobile. In this action, Rich and Safeco third partied Surratt and Seaboard for contribution. The trial court found Surratt solely at fault, and rendered judgments against Seaboard in favor of plaintiffs as follows: Mrs. Brown $1,348.-00 for personal injuries and medical expense; Grinnel in the sum of $446.00, and Rich in the amount of $1,429.24. All other claims were dismissed. Seaboard appeals all of the adverse judgments. There is no dispute as to the amounts awarded plaintiffs. The sole controversy is whether Seaboard should be held liable on the theory that Surratt was solely at fault, or whether Safeco and Rich should be held liable on the ground Rich was the only negligent party. Seaboard alternatively contends that Rich and Surratt should be held solidarily liable as joint tort-feasors.
It is conceded that Surratt’s unsignaled lane change triggered the ensuing three car accident. The pivotal issue is whether Surratt was confronted with an emergency which relieved him of fault or whether he was negligent in not sooner observing the lighted vehicle and bringing his own vehicle under control in time to avoid the accident. The determinative factor is whether the stalled vehicle displayed sufficient lights as to charge Surratt with negligence in failing to timely discover its presence on the highway. As is to be expected, the issue is seriously disputed.
Mr. Collett testified that immediately before the accident, he was proceeding easterly in the inside lane of travel at a speed of 55 to 60 miles per hour. He was overtaking the slower moving Surratt vehicle proceeding in the same direction in the outside lane. Without signal or warning, Surratt veered into the inside lane about 30 to 35 feet ahead of Collett, just as Col-lett was preparing to pass. Collett did not see the stalled car in the outside lane prior to the accident. He was unaware of the reason for Surratt’s sudden maneuver until after the accident occurred. Collett estimated Surratt’s speed at between 35 and 40 miles per hour. He stated that when Sur-ratt changed lanes, he, Collett, applied his brakes and attempted to turn left. In so doing, he almost collided with a concrete abutment or railing to his left. He stated that the right center of his vehicle struck the left rear of Surratt’s automobile. Almost immediately thereafter, his vehicle was struck from behind by Rich’s car, and shoved again into the rear of Surratt’s truck. Just before the initial collision, Col-lett observed Rich’s vehicle traveling approximately four to six car lengths behind Collett in the inside lane. He noted that the bright lights from Rich’s vehicle were disturbing his vision. He estimated that his car traveled about ten feet after striking Surratt’s truck when the second impact occurred. Collett also noted that the impact between Rich’s vehicle and his own was much more severe than his initial collision with Surratt’s truck, and that the second collision between his vehicle and Surratt’s was much harder than the first. Following the accident, Collett observed the stalled car in the right hand lane. In discussing the matter with Surratt after the accident, Surratt told him that he, Sur-ratt, did not see the parked vehicle until he was so close he had to swerve to miss it. Collett inspected the lights on the stalled vehicle and found that they were so dim they were almost dead. He also stated the red reflector glasses on the tail lights were intact. He found no flares or other warn *453 ing devices had been set out by the party who abandoned the stalled vehicle.
Rich’s testimony is to the effect he was traveling easterly in the inside lane about six or seven car lengths behind Collett at a speed of approximately 55 to 60 miles per hour. He observed Surratt traveling ahead in the outside lane and also saw Surratt suddenly change lanes. He noted nothing which would cause Surratt to change lanes, and assumed that Surratt could make the change safely. However, as Surratt’s truck cleared the outside lane Rich saw a car parked in the outside lane with its hood up and two burning white lights which looked more like headlights than tail lights. - He surmised that the parked vehicle either had no reflectors on its tail lights or that its back up lights were on and burning. Within a few seconds after Surratt changed lanes, Rich saw the brake lights of Collett’s vehicle come on. Rich applied his brakes, but could not stop in time to avoid striking Collett’s automobile. He state he could not veer to the right because the parked automobile blocked that lane. He estimated he was traveling approximately 20 miles per hour when he struck Collett’s car, and that he was unaware that Collett had collided with Surratt until after the accident. He also stated that Collett’s speed was checked at such a fast rate that it seemed as though Collett hit a brick wall. Rich further stated that Trooper Leger arrived at the scene within 10 to 15 minutes after the accident occurred. As he expressed it, the officer arrived “pretty quick after the accident.”
In essence, Mrs. Gladys Brown, Rich’s guest passenger, testified she was not observing traffic until her host warned her to brace herself. She then observed Sur-ratt change lanes and as he cleared the outside lane, she noted a vehicle parked in the outside lane with its hood up. She stated that Rich was traveling about seven car lengths behind Collett, and that it was only due to Rich’s skillful driving that she was not killed in the accident.
Mrs. Marjorie Collett stated in substance that she was resting her head on the back of the front seat when her husband cautioned her to brace herself. She also stated that Mr. Collett had just previously remarked that a vehicle was rapidly approaching from the rear. Mrs. Collett did not see the stalled car. She declared that her husband’s car was struck in front and then from the rear.
Trooper Leger’s report, admitted as evidence, recites that the parked vehicle’s lights were burning when he arrived at the scene. It also relates that, according to statements of all three drivers involved, this same condition existed at the time of the accident. The report further states that numerous skid marks found to the rear of the parked vehicle indicated that a number of vehicles had come upon the stalled vehicle and applied their brakes.
The trial court expressly found that the stalled vehicle was properly lighted and that Surratt was not faced with a sudden emergency. Relying on Rizley v. Cutrer, 232 La. 655, 95 So.2d 139, the lower court held that a motorist executing a lane change must exculpate himself from the inference of negligence if the maneuver precipitates an accident. The trial court also held that Seaboard failed to establish Surratt’s freedom from negligence, and found further that Rich was free of negligence. Seaboard contends Rizley v. Cu-trer, above, is inapplicable because Surratt was faced with a sudden emergency not of his own making, namely, a dimly lighted vehicle stalled in his lane of travel. Seaboard also contends Lejeune v. State Farm Mutual Automobile Insurance Company, La.App., 107 So.2d 509, is also inapplicable because it is factually distinguishable in that it involved a motorist who failed to detect that the pavement ahead narrowed. Therefore, according to Seaboard, the instant case falls within that line of jurisprudence established in Woods v. Employers Liability Assurance Corporation, La.App., 172 So.2d 100, and Lobell v. American Indemnity Company, La.App., 211 So.2d 439, *454 which exonerates a motorist from fault for running into the rear of a parked and improperly lighted vehicle, or who causes an accident by changing lanes to avoid such an obstacle. We note that in Woods, above, the stalled vehicle was found to have been left without lights or other warning devices. In Lobell, above, despite a conflict of evidence regarding whether the stalled vehicle was lighted or not, the court, under the facts of that case, held the overtaking driver free of fault.
We believe the rule announced in Rizley, above, requires that a motorist who abruptly and without warning changes his lane of travel must exculpate himself from the attending inference of negligence.
We are likewise of the view that whether Surratt was negligent or not is a matter to be decided in the light of the circumstances of this particular case. We are of the further opinion that whether Surratt is held negligent under the circumstances must depend upon whether the stalled vehicle was properly lighted or not.
It has been held on numerous occasions, and under varying circumstances, that a motorist who collides with the rear of a parked vehicle at night will be deemed negligent if the attending circumstances were such that he could or should have seen the stalled vehicle in time to avoid an accident. McCain v. State Farm Mutual Automobile Insurance Company, La.App., 236 So.2d 922; Phillips v. Garden, La.App., 211 So.2d 735; Piggly Wiggly Operators’ Warehouse, Inc. v. Commercial Union Ins. Co. of New York, La.App., 174 So.2d 207; Eubanks v. Wilson, La.App., 162 So.2d 842; Bodan v. American Employers’ Insurance Company, La.App., 160 So.2d 410. On the other hand, a motorist is exonerated from fault in striking an unlighted vehicle at night where the circumstances are such that he could not be reasonably expected to discover its presence upon the highway in time to avoid an accident. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127; Woods v. Employers Liability Assurance Corporation, La.App., 172 So.2d 100; Regan v. Vincent, La.App., 162 So.2d 79; Arnold v. Grain Dealers Mutual Insurance Co., La.App., 190 So.2d 261.
 As indicated from the above rés-umé of testimony, there is a glaring conflict in the evidence regarding the condition of the lights on the stalled vehicle. Mr. Collett, who did not see the parked car until after the initial collision, stated the tail lights on the parked automobile were practically out. Conversely, Rich observed white lights on the rear of the parked car when Surratt changed lanes. Rich’s version of the condition of the lights on the parked car is supported by the report of Trooper Leger. Had the lights on the parked car been as dim as Collett indicated, it would appear this vital information would have been reflected on Leger’s report. Faced with this conflict of evidence, the trial court concluded the parked car was adequately lighted and that Surratt could and should have seen it in time to bring his vehicle under control without a mishap. It is well settled that the findings of fact of the trial court are entitled to great weight and are not to be set aside unless manifest error is shown. Readco Industries, Inc. v. Myrmax Specialties, Inc., La.App., 236 So.2d 573. The instant case appears to be the classic example in which the manifest error rule should apply. The present record contains evidence amply supporting the conclusion reached. We further find the record preponderates in favor of the finding that Surratt was negligent.
In rear end collision cases, the following motorist must exculpate himself from the inference of negligence. Palmisano v. Thibodeaux, La.App., 219 So.2d 196. The presumption, however, does not apply where a motorist is struck from the rear as a result of his making a sudden, unsignaled lane change. Anthony et ux. v. State Farm Mutual Insurance Co., et al., La.App., 227 So.2d 180. Since Rich did not collide with Surratt, the pertinency of *455 Anthony, above, would appear questionable. In any event, it is unnecessary to consider the possible application of Anthony insofar as it bears upon Rich’s burden of proof. Assuming Anthony to he applicable herein, we find, as did the trial court, that Rich was free of negligence.
Rich was proceeding in the inside lane at a speed between 55 and 60 miles per hour at a distance of approximately seven car lengths behind Collett. Under the circumstances, we find no fault with Rich’s driving. He was confronted with a sudden emergency which completely blocked the highway ahead. The inside railing prevented his veering to the left. The stalled car blocked the outside lane. He took the only course available, namely, he applied his brakes and attempted to stop. We absolve Rich of negligence.
The judgment of the trial court is affirmed; all costs of these proceedings to be paid by appellant, Seaboard Fire and Marine Insurance Company.
Affirmed.